UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:                                    CASE NO.: 6:13-bk-12427-ABB

CRAIG STAGGS,

      Debtor.

_____/

ALAN SMALLWOOD,                    CASE NO. : _____
      Plaintiff

vs.

CRAIG STAGGS
      Defendant

_____/


**ADVERSARY COMPLAINT**


      COMES NOW, Plaintiff, ALAN SMALLWOOD, ("SMALLWOOD" or "Plaintiff")

and complains of CRAIG STAGGS ("STAGGS" or   "Defendant"), and respectfully show the

following :

**INTRODUCTION**


1.   This is an action to determine the dischargeability of a debt arising from fraud in connection

with SMALLWOOD's  purchase of a restored 1969 Pontiac GTO from STAGGS.    Plaintiff

SMALLWOOD seeks an order denying the discharge as to this debt, actual damages, punitive

damages, injunctive and declaratory relief, and legal fees and expenses filed by the Plaintiff for

1

the Defendant STAGGS' fraudulent conduct.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction to consider the claims in this Complaint pursuant to 28 U.S.C.

§ 1328, 1328 (a)(2), 523(a)(2)(A), 523(A)(6), 28 U.S.C. §§ 2201-2202.   Moreover, pursuant to

the Order of Reference, as authorized by § 104 of the Bankruptcy Amendments and Federal

Judgship Act of 1984, 28 U.S.C. § 157, all cases in the Middle District of Florida under Title 11

and/or proceedings arising in or related to a case under Title 11, are referred to the Bankruptcy

Court for the Middle District of Florida.   The Court has the authority to enter a final order

regarding this contested matter because it constitutes a core proceeding as contemplated by 28

U.S.C. § 157(b) (2)(A), (E), (G), (I), (J) and (O).   Pursuant to Sections 1408, 1409, and 1391(b)

of Title 28 of the United States Code, venue is proper in this district/division.

## PARTIES

3.   Plaintiff SMALLWOOD  is a natural person residing in Butler, Pennsylvania.

4.   Defendant STAGGS is a natural person residing in Volusia County, Florida.    (Defendant

STAGGS was a resident of Kansas when the events alleged in this Complaint occurred.)

2

5.      SMALLWOOD was in the market for a rust-free, built from scratch restoration and

classic Pontiac GTO and subsequently located STAGGS' listing on eBay.

6.      The GTO STAGGS listed on eBay was not what SMALLWOOD was looking for (i.e.,

rust-free, restored/re-built from scratch).

7.      Nevertheless, SMALLWOOD contacted STAGGS and asked STAGGS if he could

restore a GTO from the beginning – from the ground up, body off frame.

8.      STAGGS (mis)represented to SMALLWOOD that he could restore a GTO from the

beginning, from group up, body off frame, and that he had such a rust-free GTO from

Texas that STAGGS would be willing to restore for SMALLWOOD.

9.      SMALLWOOD relied upon the foregoing representations.

10.     After numerous phone conversations, emails, and text messages (collectively referred to

as the "Negotiations"), a contract entitled "69 GTO Restoration Contract and Terms" (the

"Contract") was finalized during June, 2012, and signed by the parties.   The Contract

was for the restoration of a Pontiac GTO featuring a VIN number from Texas.

11.    SMALLWOOD is informed and believes that STAGGS did not have a "rust-free GTO

from Texas" to restore for SMALLWOOD.     According to the Commonwealth of

Pennsylvania, the  Texas VIN that STAGGS provided to SMALLWOOD does not  exist.


12.    The Contract included, but is not limited to, restorative services including : (1) restoration

type "standard driver & show quality"; (2) $ 7,200 for restoration paint job; (3) $ 2,225

for "complete tri-card setup for 455ci"; (4) $ 350 for "complete interior cleanup and

restore"; and (5) $ 400 for "undercarriage cleanup and painting".   SMALLWOOD relied

upon these representations.


13.    STAGGS represented to SMALLWOOD that the GTO's restoration was to be completed

by the end of July, 2012.  SMALLWOOD relied upon these representations.


14.    SMALLWOOD subsequently paid half the contract price as per the contract

specifications to get the GTO's restoration process going.


15.    SMALLWOOD and STAGGS continued to talk and communicate via email regarding

restoration extras and/or upgrades that subsequently increased the price by approximately

$ 8,000.00 and pushed the completion date until the end of August, 2012.


16.    SMALLWOOD sent STAGGS additional monies to cover the restoration extras and/or

upgrades not included in the original contract.

17.     Subsequently, STAGGS cancelled three appointments with SMALLWOOD (or

Plaintiff's friend) to inspect the progress of the restoration of the GTO on : (1) September 6,

2010; (2) October 10, 2010; and (3) an additional appointment with Plaintiff's friend.


18.     Subsequently, the restored GTO was shipped to SMALLWOOD in Pennsylvania.


19.     Upon receipt of the GTO, SMALLWOOD could immediately see that the GTO was not

painted properly and that the assembly was misaligned.


20.     Further, the delivered GTO did not run properly and had obvious defects in the bodywork

and pain job that constituted substandard quality below the Contract's restoration

specifications.


21.     To date, SMALLWOOD paid STAGGS approximately $ 43,735.00 for the GTO's

restoration


22.     SMALLWOOD had a body shop provide a written estimate as to how much it would cost

to repair the delivered GTO and get it in the state that STAGGS and the Contract

represented.


23.     SMALLWOOD has received preliminary estimates in the amounts of $ 19,946.54 to get

the GTO's body and $ 6,728.40 to get the GTO's engine in the restored condition(s)

STAGGS represented the GTO would be pursuant to the Contract.

24.     SMALLWOOD tried repeatedly to contact STAGGS regarding the GTO's issues,

problems and deficiencies but STAGGS would not take and/or return SMALLWOOD's

calls.

25.     SMALLWOOD eventually got ahold of STAGGS by calling the truck driver's phone

number.  STAGGS answered the phone.

26.     SMALLWOOD told STAGGS that the delivered GTO was not the restored vehicle

STAGGS represented and contracted that it would be, that it is in poor condition, the

motor will not run and has an oil leak.

27.     STAGGS did provide SMALLWOOD with a list of items that STAGGS has admitted

STAGGS did not complete in the restoration of the GTO although he was paid for same

and even though the restoration of the subject GTO was paid for in full.

28.     Further, the vehicle identification number ("VIN") on the delivered GTO was from a car

from Baltimore, Maryland (which is not from Texas) and was not rust-free as represented

and required by the Contract.   Furthermore, the VIN numbers on the delivered GTO did

not match the VIN numbers in the restoration contract or the body's plate-tag on the dash.

The VIN discrepancies have prevented SMALLWOOD from getting the vehicle titled in

6

Pennsylvania.

29.     STAGGS sold SMALLWOOD a restoration for a different vehicle than SMALLWOOD

contracted for — a classic bait and switch.

30.     SMALLWOOD has taken the GTO's title(s) to the Pennsylvania State Police.   Because

one of the titles is not in STAGG's name, SMALLWOOD cannot legally purchase and

title the restored GTO in Pennsylvania.   This process is known as "jumping titles" in the

Commonwealth of Pennsylvania.

31.     According to the Commonwealth of Pennsylvania, the VIN for the alleged Texas GTO

does not even exist.

32.     The vehicle SMALLWOOD received also did not contain air conditioning, despite

STAGGS' representation in an Addendum to "69 GTO Restoration Contract and Terms"

that the vehicle would have air conditioning.

33.     SMALLWOOD paid $ 1,269.00 for "complete Air Conditioning System".

34.     Further, the restored GTO suffers from numerous other problems, including, but not

limited to :

1.      Spoiler not properly aligned;

2.      numerous problems with body work and paint finish;

3.      rust;

4.      no inner or outer door seal;

5.      obstructed oil flow by excess pieces;

6.      wrong seal in motor;

7.      cracked/broken glass;

8.      passenger side back window is scratched; and

9.      parts installed improperly.


35.    Plaintiff SMALLWOOD sent Defendant STAGGS a *Nelson v. Miller* (pre-suit) demand

on December 11, 2012.  Defendant STAGGS responded to this letter, generally denying

liability, necessitating the filing of this action.


36.    During 2013, SMALLWOOD filed an action against STAGGS in the District Court of

Johnson County, Kansas (the "Kansas Action") (Case No. 13-CV-00501).    The Kansas

Action arises from the same transaction and events as this Adversary Proceeding.

SMALLWOOD incurred attorney's fees and taxable costs in prosecuting the Kansas

Action as well as in Defendant STAGGS' bankruptcy (base case) and this Adversary

Proceeding.


37.    Plaintiff has complied with all conditions precedent to the filing of this action or such

conditions have been waived.

38.     Plaintiff is obligated to pay his attorneys a reasonable fee in prosecuting this adversary

proceeding, Defendant's base case, and the Kansas Action.

## <u>COUNT ONE</u>
## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
## UNCONSCIONABLE ACTS AND PRACTICES

39.     Plaintiff SMALLWOOD hereby incorporates and re-alleges paragraph numbers 1 - 38 as

if fully set forth herein.

40.     Defendant STAGGS is a "supplier" under the Kansas Consumer Protection Act

("KCPA").   K.S.A. § 50-624(1).

41.     Plaintiff SMALLWOOD is a "consumer" under the KCPA.  K.S.A. § 50-624(b).

42.     Defendant STAGGS' restoration and sales Contract of the subject GTO constitutes a

"consumer transaction" under the KCPA, specifically K.S.A. § 50-624©.   Specifically,

under K.S.A. § 50-624 (-c-), "consumer transaction" includes "services within this state

... to a consumer".   Under K.S.A. § 50-624 (k), "services" includes "(1) work, labor, and

other personal services" and "(3) any other act performed for a consumer by a supplier".

43.    Plaintiff SMALLWOOD has been damaged and is "aggrieved" pursuant ot the KCPA as a result of Defendant STAGGS' conduct.

44.    Defendant STAGGS' violations of K.S.A. § 50-627, "Unconscionable Acts And Practices", include but are not limited to :

(A).    generally engaging in unconscionable conduct, in violation of K.S.A. § 50-627 (a);

(B).    generally making unconscionable representations and/or misrepresentations, in violation of K.S.A. § 50-627(a); and

(-C).    the consumer was unable to receive a material benefit from the subject of the transaction, including, but not limited to :

    (1) the delivered GTO was a car from Baltimore, MD which was not rust-free (like a car from Texas should be and the Contract expressly represented); and

    (2)  the vehicle identification number ("VIN") on the delivered vehicle does not match the VIN in the Contract or the body's plate-tag on the dash. thereby violating K.S.A. § 50-627(b)(6).

WHEREFORE, for Count One of Plaintiff's Adversary Complaint, Plaintiff SMALLWOOD respectfully requests that this Court enter judgment against Defendant STAGGS

in the amount of Ten Thousand Dollars ($ 10,000.00) for every violation of the Kansas

Consumer Protection Act per K.S.A. § 50-636 (a), or for Plaintiff's actual damages, whichever is

greater, for Plaintiff's costs and attorneys fees per K.S.A. §§ 50-634(e) and 50-639 (e), for pre

and post-judgment interest at the greatest rate allowed by the State of Kansas, holding that the

amounts awarded under this Count One are not discharged in Debtor's bankruptcy, and for any

other relief which the Court may deem just and proper.


## COUNT TWO
## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
## DECEPTIVE ACTS AND PRACTICES

42.      Plaintiff SMALLWOOD hereby incorporates and re-alleges paragraph numbers 1 through

         38 and 40 through 43  as if fully set forth herein.


43.      Defendant STAGGS' violations of K.S.A. § 50-626, "Deceptive Acts And Practices",

          include but are not limited to :


         (A).     the supplier made willful use, in both oral and written representations, of

                  exaggeration, falsehood, innuendo or ambiguity as to a material fact, in

                  violation of K.S.A. § 50-626(b)(2);


         (B).     the supplier willfully failed to state a material fact, or willfully concealed,

                  suppressed or omitted a material fact, in violation of K.S.A. § 50-

11

626(b)(3);

(-C-)   the supplier (generally) made false and/or misleading representations, knowingly or with reason to know, of fact, in violation of K.S.A. § 50-626(a), to which Plaintiff relied upon said representation(s) to his detriment;

(D).   the supplier knowingly or with reason to know represented that the subject GTO's restoration had or would have accessories, characteristics and/or parts that it did not have, in violation of K.S.A. § 50-626(b0(1)(A); and

(E).   the supplier knowingly or with reason to know represented that the subject GTO's restoration had or would have characteristics and/or a finish of a particular standard, quality and/or grade, in violation of K.S.A. § 50-626(b)(1)(D).

44.   Defendant STAGGS knowingly or willfully fraudulently misrepresented and/or concealed many material facts :

(A).   STAGGS willfully used in oral and written false representations in oral and/or written communications :

12

(1) that he had a GTO from Texas to sell;

(2) that the Texas GTO was rust free;

(3) that Defendant could restore the GTO to "standard driver and show quality" – from the ground up, body off frame;

(4) that Defendant would restore the GTO (from the ground up, body off frame) to "standard driver and show quality".

(B).    STAGGS willfully failed to state material facts and/or concealed, suppressed, or omitted material facts including but not limited to:

(1) that the delivered GTO came from Baltimore, MD;

(2) that the delivered GTO had substantial rust damage;

(3) that STAGGS did not hold title to the delivered GTO or that STAGGS' claim to any purported title suffered material defect(s);

(4) that the Vehicle Identification Number(s) and "Dash-Tag" did not match;

13

(5) that the fit and finish of the delivered GTO was not "show quality" including but not limited to substantial rust damage, misalignment of parts, missing door seals, substandard body work and paint finish, and many parts are installed improperly;

(6) that the delivered GTO suffered numerous material mechanical problems and was not ready to drive. For example, the motor will not run and it has an oil leak.  The motor contains the wrong seal and oil flow is obstructed by excess pieces.

(-C-)    STAGGS knowingly  made false and/or misleading representations and/or omissions alleged above.

WHEREFORE, for Count Two of Plaintiff's Adversary Complaint, Plaintiff SMALLWOOD respectfully requests that this Court enter judgment against Defendant STAGGS in the amount of Ten Thousand Dollars ($ 10,000.00) for every violation of the Kansas Consumer Protection Act per K.S.A. § 50-636 (a), or for Plaintiff's actual damages, whichever is greater, for Plaintiff's costs and attorneys fees per K.S.A. §§ 50-634(e) and 50-639 (e), for pre and post-judgment interest at the greatest rate allowed by the State of Kansas, holding that the amounts awarded under this Count Two are not discharged in Debtor's bankruptcy, and for any other relief which the Court may deem just and proper.

## COUNT THREE

### FRAUD

45.    Plaintiff SMALLWOOD hereby incorporates and re-alleges paragraph numbers 1 - 38 as

if fully set forth herein.


46.    Defendant STAGGS made numerous oral and written representations regarding the

restoration and sale of the subject GTO to Plaintiff SMALLWOOD including but not

limited to :

>                (1) that he had a GTO from Texas to sell;

>                (2) that the Texas GTO was rust free;

>                (3) that Defendant could restore the GTO to "standard driver and
>                show quality" – from the ground up, body off frame;

>                (4) that  Defendant would restore the GTO (from the ground up,
>                body off frame) to "standard driver and show quality".


47.    Defendant STAGGS made the foregoing misrepresentations with fraud, knowingly,

deliberately, wilfully, or with such gross negligence as to indicate wanton disregard for

SMALLWOOD's rights.

48.    Defendant STAGGS knew that these aforementioned representation(s) were false at the

time they were given and were made for the purpose of inducing Plaintiff SMALLWOOD

to rely upon them.


49.    Plaintiff SMALLWOOD reasonably relied upon Defendant STAGGS' representations.


50.    Defendant STAGGS knowingly or wilfully omitted numerous material facts from

Plaintiff SMALLWOOD including but not limited to :


(5) that STAGGS did not have a "rust free" GTO from Texas to

sell or that STAGGS had unilaterally "decided" to substitute a rust

damaged car which contained a VIN(s) which did not match match

the dashplate;


(6) that STAGGS planned to switch  SMALLWOOD by delivering

a different GTO to wit, a GTO from Baltimore, MD which had

substantial rust damage and VIN(s) which did not match the

dashplate;


(7) that STAGGS was either unable or unwilling to perform the

mechanical, body, and paint work required to restore the GTO to

"standard driver and show quality";

51.    Defendant STAGGS made the foregoing misrepresentations with fraud, knowingly,

deliberately, wilfully, or with such gross negligence as to indicate wanton disregard for

SMALLWOOD's rights.


52.    The facts that Defendant STAGGS misrepresented to Plaintiff SMALLWOOD were

material.


53.    Defendant STAGGS intended for Plaintiff SMALLWOOD to rely upon his

representations and omissions.


54.    Plaintiff SMALLWOOD justifiably relied upon Defendant STAGGS' representations and

omissions.


55.    Defendant STAGGS' misrepresentations (including omissions) to Plaintiff

SMALLWOOD caused Plaintiff to suffer damages.


WHEREFORE, for Count Three of Plaintiff's Adversary Complaint, Plaintiff

SMALLWOOD respectfully requests that this Court enter judgment against Defendant STAGGS

in the amount of

Plaintiff's actual damages and an additional amount for punitive damages (not to exceed three

times Plaintiff's actual damages), taxable costs, pre and post-judgment interest at the greatest rate

allowed by the State of Kansas, holding that the amounts awarded under this Count Three  are

not discharged in Debtor's bankruptcy, and for any other relief which the Court may deem just and proper.

## COUNT FOUR

### BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
### AND FITNESS FOR A PARTICULAR PURPOSE

56.     Plaintiff SMALLWOOD hereby incorporates and re-alleges paragraph numbers 1 - 38 as if fully set forth herein.

57.     The Contract supplied by Defendant STAGGS and entered into between Plaintiff and Defendant in or to build/restore the subject GTO to explicit, material and agreed upon specifications, excluded the implied warranties of merchantability (K.S.A. § 84-2-314) and fitness for a particular purpose (K.S.A. § 84-2-315), in violation of K.S.A. §§ 50-627(b)(7) and 50-639.

58.     STAGGS attempted to exclude these warranties because he knew that the vehicle he intended to deliver was not the vehicle he contracted to deliver to SMALLWOOD and/or would be neither "merchantable" or "fit" for show and/or to drive.

59.     The vehicle identification number ("VIN") on the delivered GTO was from a car from Baltimore, MD (which is not rust-free like it should have been from Texas) and did not

match the VIN number in the parties' Contract or the plate-tag on the dash of the delivered GTO.   This "issue" prevents SMALLWOOD from getting the GTO titled in Pennsylvania, and thus prevents SMALLWOOD from driving or enjoying the subject GTO.

60.    Because SMALLWOOD cannot title, legally drive and/or enjoy the purchased GTO, the GTO is neither

61.    At the time of contracting, STAGGS knew that SMALLWOOD intended to title, drive and/or enjoy the purchased and restored GTO and that SMALLWOOD was relying upon STAGGS' alleged skill or judgment with respect to furnishing a suitably restored GTO using a rust-free GTO from Texas.

62.    Plaintiff has been damaged as a proximate result of Defendant STAGGS' breach of warranties or merchantability and fitness for a particular purpose.

63.    STAGGS knowingly and willfully breached these warranties of merchantability and fitness for a particular purpose with the intent to defraud SMALLWOOD.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant STAGGS in the amount of Ten Thousand Dollars ($ 10,000.00) for every violation of Kansas Consumer Protection Act per K.S.A. § 50-636 (a), or for Plaintiff's actual damages,

whichever is greater, for Plaintiff's costs and attorneys fees (per K.S.A. §§ 50-634 (e) and 50-639 (e), for pre and post-judgment interest at the greatest rate allowed by the State of Kansas, that the Court declare the amount awarded pursuant to this Count Four are not discharged in Debtor's bankruptcy, and for any other relief which the Court may deem just and proper.

WHEREFORE, CREDITOR SMALLWOOD RESPECTFULLY REQUESTS that this Court enter an Order: (1) Granting Creditor's Motion to Deny Debtor's Discharge as to the claim(s) brought by Creditor SMALLWOOD including but not limited to actual damages, statutory damages, punitive damages, reasonable attorney's fees (incurred in the Kansas Action, Debtor's bankruptcy, and this Adversary Proceeding); (2) taxable costs; and (3) pre- and post-judgment interest as allowed by law; (4) that the Court declare such sums as not discharged in Defendant's bankruptcy; and (5)  such other relief as the Court may deem proper.

By separate Motion to Dismiss, Creditor has or will soon seek an order : (4)  Granting the Objection to Confirmation; (2) Denying Confirmation of Debtor's Plan; (5) Awarding attorney's fees and costs to the Creditor; (6) Dismissing Debtor's Chapter 13; (7) Enjoining Debtor from converting to Chapter 7 or filing any Bankruptcy for a period of 180 days after the date of the Order.

RESPECTFULLY SUBMITTED ths 6th  day of JANUARY, 2014.

/s/ Donald E. Petersen
Donald E. Petersen
P.O. Box 1948
Orlando, FL 32802-1948
Voice : (407) 648-9050
Messages / Assistant : (407) 403 - 6760

Email : Petersen221@yahoo.com
E.C.F. (Only) depecf@cfl.rr.com
Florida Bar No.: 0776238
Attorney (Co-Counsel) for the Plaintiff
ALAN SMALLWOOD